UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) <br> ) <br> CLASSIC WORLD PRODUCTIONS, INC., ) <br> ) <br> Debtor. ) <br> _____ ) <br> ) <br> CLASSIC WORLD PRODUCTIONS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> C/F INTERNATIONAL, INC., ) <br> ) <br> Defendant. ) | Case No. 05 B 29921 <br><br> Chapter 11 <br><br><br><br><br> Adv. No. 05 A 1700 <br><br><br><br> Judge Pamela S. Hollis |

## MEMORANDUM OPINION

This matter comes before the court on C/F International's motion for summary judgment on Classic World's complaint to avoid two transfers as preferential and fraudulent. For the reasons stated below, the motion is granted.

CFI filed a statement of uncontested facts, as it is required to do pursuant to Local Bankruptcy Rule 7056-1. Classic World filed its own statement of uncontested facts, but it did not respond to each fact set forth by CFI, as required by the Local Bankruptcy Rules. Instead, it simply repeated certain of CFI's facts, ignored others, and stated new facts. When CFI filed its reply, it did not address Classic World's new facts.

Although the parties agree on nearly all of the relevant facts, compliance with the Local Bankruptcy Rules is still required. Therefore, all of the facts set forth by CFI in its motion are deemed admitted, as are the facts set forth by Classic World in its response.

## FINDINGS OF FACT

CFI is a creditor of Classic World by virtue of a judgment against Classic World in the principal amount of $1,033,221.00 issued by the United States District Court for the District of New Jersey. Judgment was entered against Classic World on or about December 28, 2004.

CFI commenced this suit against Classic World and other parties in 2001 for copyright infringement.

CFI has a permanent injunction against Classic World prohibiting further unlawful distribution of CFI's Tom Jones television series.

CFI registered its judgment in the United States District Court for the Northern District of Illinois on or about March 10, 2005, and initiated a supplementary proceeding to enforce the judgment.

On or about July 12, 2005, pursuant to Judge Kennelly's order in the judgment enforcement action, CFI levied upon all of Classic World's tangible property located at its Aurora, Illinois office and all intangible property of which it had knowledge. Also on that date, CFI served Classic World with a citation to discover assets.

Classic World filed for relief under Chapter 11 of the Bankruptcy Code on July 30, 2005.

On or about August 2, 2005, Classic World filed this adversary proceeding against CFI, setting forth the following counts: Count I – Avoidance of Preferential Transfer; Count II – Avoidance of Fraudulent Transfer; Count III – Avoidance of Citation Lien as Preference; Count IV – Action for Turnover of Property of the Estate; Count V – Injunctive Relief for Return of Property.

Simultaneously therewith, Classic World also filed a motion to compel CFI to return the property it had seized in the judgment enforcement action. Pursuant to the parties' agreement and this court's order of August 9, 2005, Classic World withdrew its motion to compel and CFI returned the seized property.

According to Classic World's schedules of assets and liabilities, the estimated value of its assets is $16,390,150.00. Its liabilities, according to its schedules, consist of a $400,000 secured claim, $220,000 in unsecured priority claims, and $1,120,619.64 in unsecured non-priority claims, for a total of $1,740,619.64. CFI's claim is included in Classic World's schedules among the unsecured non-priority claims.

## LEGAL ANALYSIS

Standard for a Motion for Summary Judgment

Summary judgment is appropriate under Rule 56 if the moving party shows that no genuine issue of material fact exists and that it is entitled to prevail in the case as a matter of law. In ruling on the motion, the court must draw all reasonable inferences from the underlying facts in the responding party's favor. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 599 (1986).

Counts I and III of the complaint seek to avoid as preferential transfers the liens created by CFI's levy and service of the citation to discover assets. Transfers of an interest of the debtor in property that occur during the 90 days prior to bankruptcy, even involuntary transfers, may trigger a complaint to avoid the transfer as preferential under 11 U.S.C. § 547(b). The five requirements a plaintiff must satisfy are that:

> The transfer must be: (1) to or for the benefit of the creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made

> while the debtor was insolvent; and (4) made within 90 days before the date of
> filing the petition. The fifth requirement . . . limits the scope of a trustee's ability
> to recoup transfers to those which: enable[ ] such creditor to receive more than
> such creditor would receive if-- (A) the case were a case under chapter 7 of this
> title; (B) the transfer had not been made; and (C) such creditor received payment
> of such debt to the extent provided by the provisions of this title.

Matter of Superior Toy & Mfg. Co., Inc., 78 F. 3rd 1169, 1171 (7th Cir. 1996) (footnote omitted).

The court has reviewed the papers submitted, and finds no question of material fact exists that: (1) when CFI levied upon all of Classic World's tangible and intangible property, and served Classic World with the citation to discover assets, it transferred a security interest in all of Classic World's personal property; (2) the levy and the citation were for the benefit of CFI; (3) both transfers were on account of an antecedent debt, which was the judgment that had been entered in December 2004; and (4) these transfers occurred within 90 days of Classic World's bankruptcy. The parties have not addressed any of these issues in their memoranda either.

Therefore, the only outstanding issues are whether questions of material fact remain as to Classic World's insolvency on the date of the transfers, and whether the transfers enabled CFI to receive more than it would receive if the case were a case under chapter 7 of this title, the transfers had not been made, and it received payment of its debt to the extent provided by the provisions of this title.

According to § 547(f), Classic World is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of his bankruptcy petition. "This presumption requires the defendant to present evidence to rebut the presumption, but it does not relieve the plaintiff of the ultimate burden of proof on this third element to establish a prima facie

case under § 547(b)." In re Golfview Developmental Center, Inc., 309 B.R. 758, 766 (Bankr. N.D. Ill. 2004) (citation omitted).

That evidence is found in Classic World's own schedules, according to which the value of its assets exceeds its liabilities nearly ten times over. Classic World argues that the values assigned to its assets on its schedules are merely estimates, and are not reliable for purposes of determining solvency. However, "[i]nformation from a debtor's schedules has been held sufficient to rebut the presumption of insolvency." In re Johnson, 189 B.R. 744, 747 (Bankr. N.D. Iowa 1995). Johnson further stated that "Debtor's schedules filed in his chapter 11 case are sufficient to support a finding of solvency at the time of the transfers. The presumption was rebutted." Id.

In fact, as Johnson points out, debtors who seek relief under Chapter 11 may have reasons other than insolvency for doing so. For example, in its disclosure statement filed March 6, 2006, Classic World stated that its problems began with litigation involving CFI. When CFI seized its property, Classic World filed bankruptcy "in order to recover its merchandise to preserve its assets pending the appeal . . .". The presumption of insolvency was included in the Bankruptcy Code to assist trustees who must litigate avoidance claims without the benefit of having been involved with the debtor at the time of the transfers. It should not be twisted out of context to raise an issue of material fact where none exists.

Classic World argues that the schedules were not attached as an exhibit to CFI's statement of material facts. "Several opinions hold that in reviewing the debtor's financial condition, a Court can take judicial notice of the debtor's schedules in order to determine if the debtor was insolvent on the date of the preferential transfer." In re Strickland, 230 B.R. 276, 283

(Bankr. E.D. Va. 1999) (citations omitted). See also F.R.E. 201; Cagan v. Intervest Midwest Real Estate Corp., 774 F. Supp. 1089, 1091 n.1 (N.D. Ill. 1991) (the court may take judicial notice of the court file). While the Strickland court itself declined to make a finding of insolvency based on the schedules, that court was being asked to compare the debtor's condition on the petition date to its financial status nine months earlier. In this case, the allegedly preferential transfers occurred only 18 days before Classic World filed for bankruptcy.

Despite Johnson, Classic World argues that CFI has failed to present the type of evidence required to rebut the presumption of insolvency, as described by Judge Katz in In re Crystal Medical Products, 240 B.R. 290 (Bankr. N.D. Ill. 1999). The court has reviewed Crystal Medical Products, and concluded that its facts are not on all fours with those before the court today. In that case, Judge Katz found that the debtor was insolvent at the time of the transfer. The creditor/defendant had previously admitted, in response to a request for admissions, that the sum of the debtor's debts exceeded the sum of its property at fair valuation. 240 B.R. at 301; 11 U.S.C. § 101(32) (Insolvency is defined as the condition where the sum of the debtor's debts is greater than all of the debtor's non-exempt property at fair valuation.) The creditor later denied this admission in its response to the debtor's statement of material facts, but the only supporting reference it provided was a citation to an affidavit where a business consultant to the debtor made a conclusory statement that he "did not believe that [the debtor] was insolvent." This conclusory statement was insufficient to raise a material issue of fact.

Classic World asserts that Crystal Medical Products is analogous because CFI's only evidence is the estimated figures in Debtor's schedules. However, Classic World signed these schedules under penalty of perjury. See "Declaration Concerning Debtor's Schedules," signed by

6

Classic World's president, Darryl Payne. It is the party who assigned the values to its assets and liabilities. It cannot now be heard to complain of their inaccuracy, especially as it has repeated nearly identical numbers in the liquidation analysis in its proposed plan of reorganization. The court finds that no material question of fact exists regarding the question of Classic World's solvency, and that Classic World was in fact solvent on the date the transfers to CFI occurred.

For this reason alone, the court could grant the motion for summary judgment. However, the court will also consider whether the transfer enabled CFI to receive more than it would have received if the case were a case under chapter 7 of this title, the transfers had not been made, and it received payment of their debt to the extent provided by the provisions of this title.

If creditors would receive 100 cents on the dollar in a Chapter 7 case, then no transfer, even one that makes a creditor whole, would enable that creditor to receive more than it would have received in a Chapter 7.

In its motion to extend time to file plan and disclosure statement, first heard on November 22, 2005, Classic World states, "the Debtor's assets are sufficient to pay all creditors in full even if CFI's claim is valid." See Paragraph 11. In fact, Classic World's disclosure statement, filed on March 6, 2006, indicates in the liquidation analysis portion that assets exceed liabilities by more than $14 million. Although the disclosure statement acknowledges that "[t]here is no indication that a wholesale liquidation of Debtor's assets on a short-term basis would yield enough to pay creditors in full," the court need not assume that a Chapter 7 trustee would hold a fire sale rather than conduct an orderly liquidation. Additionally, the proposed Chapter 11 plan, also filed on March 6, 2006, provides 100 cents on the dollar to unsecured

creditors, as it must in order to satisfy the best interests test when the liquidation analysis so strongly indicates solvency.

These statements by Classic World itself, in combination with Classic World's schedules, lead the court to conclude that there is no material question of fact that in a Chapter 7 case, creditors would be paid in full. Therefore, the prepetition transfers did not put CFI in a better position, and the counts seeking to avoid the levy and the citation to discover assets as preferential must fail.

For the reasons stated above, CFI's motion for summary judgment on Counts I and III is granted.

Although the motion for summary judgment originally requested judgment on all counts of the complaint, Classic World has admitted that Counts IV and V of the complaint are moot. See Response Paragraph 8.

Therefore, the only remaining count for which CFI requests summary judgment is Count II. In Count II, Classic World seeks to avoid the imposition of CFI's liens as fraudulent transfers under 11 U.S.C. § 548(a)(1)(B), which allows a trustee to:

> avoid any transfer of an interest of the debtor in property . . . that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily – . . . .
>
>     (B)    (i)    received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
>             (ii)    (I)    was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>
>                   (II)    was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

>   (III)   intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

CFI argues, without citing any authority, that by definition its judgment and citation liens could have no greater value than the amount owed under the judgment. This principle was more eloquently set forth by Judge Barliant in In re Anand, 210 B.R. 456, 459 (Bankr. N.D. Ill. 1997), aff'd, 239 B.R. 511 (N.D. Ill. 1999):

> A secured creditor is not entitled to collect more than the amount of the debt from such a liquidation of the collateral. Any collateral value in excess of the debt is available to satisfy other creditors. . . . The value of the property, beyond the amount of the debt, is therefore not lost to the debtor or other creditors as a result of the transfer. . . . This court . . . holds that as a matter of law collateralizing an antecedent debt cannot constitute less than reasonably equivalent value regardless of the value of the collateral. This is so, again, because, from the perspective of the debtor, the value of the interest in the collateral transferred to the creditor can never be more than the amount of the debt. The value of the collateral is therefore irrelevant to the ultimate question because the excess over the debt is not lost to the debtor or other creditors.

While the Seventh Circuit instructed lower courts to consider "all the facts of each case" as part of the reasonably equivalent value analysis, Matter of Bundles, 856 F. 2nd 815, 824 (7th Cir. 1988), there is no question of material fact in this case. When it levied on Classic World's assets and when it served the citation to discover assets, CFI received a security interest in Classic World's personal property. The amount of CFI's security interest cannot be more than the amount of Classic World's debt; any excess value remains available to other creditors. There are no other factors to consider – no guarantees, no agreements to forbear from collection. As a result, there is no question of material fact that Classic World received reasonably equivalent value for this transfer.

9

CFI also asserts that because Classic World was neither insolvent nor rendered insolvent as a result of the transfers to CFI, the transfers were not fraudulent. In light of the court's finding above that Classic World was not insolvent, this is correct. However, § 548(a)(1)(B)(ii) is written in the disjunctive. Insolvency is not necessarily a requirement; a finding that any one of the three conditions in subsection (B)(ii) existed would be sufficient for the court to determine that these transfers were fraudulent. However, because the necessary condition of a lack of reasonably equivalent value does not exist, the court need not consider whether there is a question of material fact that any of the conditions in subsection (B)(ii) existed.

For the reasons stated above, CFI's motion for summary judgment is granted as to Count II.

## CONCLUSION

The court having reviewed the motion for summary judgment and the memoranda of law submitted both in support of and in opposition to it; for the reasons stated above, the court grants C/F International, Inc.'s motion for summary judgment on Counts I, II and III. As Counts IV and V are moot, this memorandum opinion and concomitant order are the final resolution of this complaint.

ENTERED:

DATE: MAR 1 4 2006

PAMELA S. HOLLIS
United States Bankruptcy Judge